Thank you. Good morning, Your Honor. Barry Morris appearing on behalf of the Petitioner-Appellant. This case comes before the Court after a motion to dismiss was granted an appellant's habeas petition. This Court reviews the decision of the district court to no vote. This is an egregious case from beginning to end. And there's no really other way to put it. It started off with the dismissal of the petition that had been filed by Petitioner. The petition that filed by Petitioner was a mixed petition. There was an exhausted claim having to do with his confession, and then there were other claims that were unexhausted. Initially, Petitioner's counsel agreed to stipulate to stay and obey it. The Respondent of the — I'm sorry — the State of California agreed. And then, for reasons that are inexplicable, counsel filed a motion to dismiss the petition. That was egregious. Why was it egregious? Well, number one, given the complexity of jurisdiction in a habeas case, once you've got a timely filed petition, you want to keep that jurisdiction. There is absolutely no reason to ever want to lose that jurisdiction. Secondly, even if you do do that, it opposes a duty to act swiftly, because without acting swiftly, the statute of limitations will expire. And once you dismiss a petition, it's as though no petition had been filed. Most importantly, there was no reason to do this except negligence. Now, Magistrate, for some reason, found that this was not egregious. I don't know how it cannot be egregious. To do — to give up a sure thing in favor of a maybe is egregious. There's no reason for it. There's no explanation. Well, I think we could all agree with you that that action, as it turned out, had no benefit to your client and a major detriment. But your client was aware that that had happened, and there was still plenty of time left on the statute of limitations even after that occurred, right? That's correct. So I'll just tell you where I'm coming from. I'm not really focused on that initial problem as much as I — I know you want to start with that because it just seems, as you said, inexplicable. I'm focused more on the later period. Let's say that 2007 to 2011 period in particular, because it — you got to help me out. I mean, at some point, it seems to me your client has to become at least a little worried, suspicious that maybe the lawyer, contrary to what he promised, never did file that Federal habeas petition back in late January, early February of 2005. Well, the Court raised a question as to what he's supposed to do under these circumstances. In Busbee, there was a four-year delay between when the attorney promised him that he was going to file it and when it actually got filed. And the Court didn't find any lack of diligence on the defendant's point — or the Petitioner's point. I think the purpose of asking for diligence is not to see how committed the — the appellant is or the Petitioner is, but to make sure that the reason the petition wasn't filed was due to circumstances that had nothing to do with him. As long as he does everything he's supposed to in a timely manner, we're fine. But did he do everything he was supposed to? Should he have asked to have his counsel terminated, or should he have fired his counsel, a plane to the bar, something like that? Well, the point is, I don't think we can put that burden on the Petitioner. First of all, to me, the defining act in this case is when the attorney for the Petitioner sent him a letter saying, we're going to have a fully exhausted petition filed very soon, and we've been prepared. That was a lie. The basic principle of estoppel is that when you trick someone or lead them to do something that's not their fault, and they suffer detriment because of it. Then here there's — there was — it was a lie. And the magistrate, for reasons that I don't understand, said either he was confused or not being honest. Well, there's no basis for assuming that he was confused. It was a lie. Well, I mean, I don't know if he was lying or not. Maybe he really did intend to do it at that point. But the thing that I guess stuck with me is that in that letter, it's a January 25th, I think, 2005 letter, he says, we're about to file this thing, and I'll send you a copy once it's filed. And he never does. And that's what I'm saying. There's basically a six-year period that goes on from there before any — you know, before the petition in this case is actually filed. And that's why I say, at some point, doesn't your client have to say, jeez, this is taking a long time? The guy said he was going to send me the copy. He never did. Maybe I should, you know, take some more extreme action other than just inquiring about how things are going. Well, there was further correspondence from the lawyer who said about, I guess, eight, nine months after he sent the letter saying he'd completed the petition, it was going to be filed shortly, where he says, oh, looks like I have to file in the Cal Supreme Court. So there's communication that's going on. But at that point, shouldn't Luna have realized, wait a second, my lawyer is not doing what he says he's going to do? At some point, doesn't he have to realize there's a pattern here? I don't think that there's any case that holds that a defendant, a Petitioner, has a duty of due diligence once the statute is passed. I mean, and in the more recent case — What about Rudin? Well, Gibbs is the one that I'm looking at. Because I think that's what — I mean, those two cases, to some extent, Suey Generis was just the same lawyer, and he's just — it's outrageous. But in Gibbs, yeah, Gibbs makes the point that the duty is not on the defendant or the Petitioner once the statute is expired. Nothing can you do. I mean, what's he supposed to do? Once the statute is gone, it's gone. But Gibbs says you still have to show some diligence after that point. And what about Rudin? So in footnote 8 of Rudin, doesn't this Court say that when it was clear that there was some problem and the State petition might not have been properly filed, that Rudin had to file something in Federal court, he had to do something to protect his rights when — even though he had counsel at that point? Well, first of all, in footnote 8, find it here. It's on 1174. 7678, 7, 9. You know, this seems unbelievable. But either one page didn't print out, or it goes from footnote 7 to footnote 9. Your colleague may be helping you out there. I mean, I'm just — 8. Where's 8? Footnote 9. Oh, there it is. Well, footnote 8 just quotes the rule of the Eighth Judicial District in Nevada. I'm not sure I understand. But bottom line, look, the diligence, the only reason for diligence is to make sure the reason he didn't file had nothing to do with him. You know, the irony of — and I'm going to try and save two minutes for rebuttal — but the irony of habeas litigation is that it's clearly the most complex part of Federal criminal law, and yet it gets litigated on the basis of pro per defendants who are in custody, who basically don't know what they're doing. So this guy filed a timely petition. I think that's all that we can expect him to do. He filed a timely Federal petition. He asked for the appointment of a lawyer. From there on in, the lawyer — I mean, I don't think there was anything more they should have done. But I don't — I know you can't ask us to take that seriously in the sense that if he — you know, if we were here 20 years later, I mean, then you would say, of course. Well, at some point, the client has to say, geez, this is taking way longer than it should have. Maybe I better do something more than just keep corresponding with this lawyer. Yeah, but the point of diligence after — I mean, what I think Gibbs makes clear is what happens afterwards can inform what happened before, but it's what's not determinative. I mean, Gibbs says that in so many words, that what happens afterwards is not determinative. And the magistrate found that the petitioner was being diligent, that there was nothing more that you could expect from him. Counsel, Judge Gould, if I could interject a question, please. Putting diligence to the side, the other requirement, as I understand it, under Pace, is that there be an extraordinary circumstances that warrant tolling. And your argument has been focused on diligence. I'd like you to please address, you know, whether or why you contend this case comes within the extraordinary circumstance process. And I realize this is using up time, you — That's all right. So I'll ask Judge Watford to give you an extra minute on your rebuttal. Of course. Okay. I'm glad you asked the question. There were three things that were extraordinary. Number one, dismissing a petition that was timely filed. That's extraordinary because there was no explanation, no reason for it, and the lawyer was aware of the fact that there was a stay-and-obey petition. Mind you, this is not the only case that this lawyer did it. There are four cases in front of the same magistrate where he blew the statute or didn't file anything for years and years and years. Second, he sat there while the statute of limitations expired. Now, that's extraordinary. He just — he should have known when the statute of limitations was, and yet he didn't do anything. And third, he lied to the client. He said, I'm taking care of it. Trust me, I'm taking care of it. It's going to be filed. Those are all extraordinary circumstances. And together, the thing that is most compelling about this is there was no reason for any of this. There was no reason to dismiss it. There was no reason to lie to the client. There was no reason to let the statute of limitations expire. Granted, extraordinary circumstances in the eye of the beholder. But you compare the urgency of the task with the reasons for the delay, and there were no reasons for the delay, and the consequences of delay were that the client's petition was thrown out of court. That's why I think these are extraordinary circumstances. Roberts. Thank you, counsel. Can I just say one thing? I apologize. I said footnote 8, but I meant 18. So if you have a chance to look at footnote 18, maybe you could. That would be great. It appears to have skipped 8. I apologize. I didn't mean 8. I meant 18. So maybe you have 18. I'm sorry. I'll rebuttal. Okay. We'll give you a couple minutes on rebuttal. All right. Thank you. We'll hear from the State now. May it please the Court. My name is Laura Simpson, appearing on behalf of the Warden. I'd first like to start by explaining the impact of Maples on the determination of whether equitable tolling may be based upon an attorney's error. Under Maples, the Supreme Court essentially clarified Holland to find that where equitable tolling may only be based where the attorney has severed the agency relationship by abandonment. The majority in Maples, and this is found at page 923 in Maples, they endorsed the concurring opinion that was authored by Justice Alito in Holland, and they approvingly noted how his concurring opinion had honed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney has essentially abandoned the client. And the Court explained that where you have an agency relationship, it doesn't matter if the agent has acted in a negligent manner. The principle still bears the risk of that, and that the exception would be where there's been a severance of that agency relationship. Counsel, Judge Gould, if I could ask a question. Let's say short of a severance, there's conduct that someone might consider egregious or extraordinary, like the counsel refusing to give files to the prisoner. Is that out under the new, under Maples, or is that still something that could give rise to tolling? The proper analysis under Maples is no longer whether this error is egregious. It specifically says that it doesn't matter however egregious the error, the focus is on whether there's been a severance of the agency relationship. And that relationship may be severed by abandonment. And in some instances, the failure to provide the files may amount to an abandonment. Again, it is a fact-specific nature. But the focus is on whether there's been a severance of the agency relationship rather than trying to apply this, in the words of Justice Alito, this artificial distinction between ordinary and gross negligence or even egregious negligence, which would be very difficult to apply. In this case, it is, of course, Petitioner's burden to demonstrate that the extraordinary circumstance of abandonment occurred, and he fails to do so. So let me just make sure I understand your position. You're saying that as long as Petitioner is ostensibly represented by a lawyer, it doesn't matter how egregious the attorney's misconduct is in the course of representing that person, unless it rises to the level of basically severing the attorney-client relationship altogether, then it just doesn't count for equitable tolling purposes? Unless it amounts to a severance of the agency relationship, because without that severance, then the acts of the attorney would still be imputed to the client. How do you reconcile that with Gibbs? In Gibbs, actually, there is a footnote that notes that it's an open question after Maples whether or not, and let's see if I have it, it notes, we do not have occasion to consider whether any misconduct short of effective abandonment may constitute extraordinary circumstance for equitable tolling. That's at footnote 5 on page 886 of Gibbs. But our response is that Maples did answer that question. The Maples majority agreed and endorsed the concurring opinion of Justice Alito in Holland, and so the analysis is whether whatever the acts are that the attorney has failed to do, however egregious, what matters is if those acts have amounted to an abandonment of his client. Can you remind me what year Maples was decided? Maples was in 2012. Okay. Let me double-check, but that's correct. We continue to rely on even in Gibbs, so post-Maples, which is completely inconsistent, I think, with what you've just told us, right? Absolutely, right. And our position would be that Maples changed the proper analysis, and it recast. Right, but what I'm saying, though, I hear you, but we are continuing to rely on Doe post-Maples, but you nonetheless think we as a three-judge panel have the authority just to toss Doe into the dustbin of this? Well, in light of the intervening Supreme Court decision in Maples, that is our position, that the attorney actions must amount to a severance of the agency relationship in order for there to be equitable tolling. And in this case, our position also applying that standard in this case, we don't have an abandonment based upon the actions that Petitioner has cited. Say that we didn't agree with your reading of the effect of Maples on Doe. Maybe you can, I assume you think Doe is nonetheless distinguishable or no? I do believe that it is distinguishable. In this instance, we have the Petitioner's attorney was in frequent contact with Petitioner. By my count, and again, we have an incomplete record on this case, and it is the he is entitled to equitable tolling due to some extraordinary circumstance. But by my count, based on the 19 letters that we do have, and also looking at the CJA form by Weissman, in 2004, there were five letters that Weissman sent during the seven-year period that he was representing him. There were seven letters sent in 2005. There is a lengthy gap, but in 2010, it appears that there were 12 letters that were sent. Also, Weissman ultimately did complete the task that he was supposed to do. He did file the petition in front of the California Court of Appeal, and he did so within just a couple weeks of the dismissal motion. But couldn't we find that that huge gap amounted to abandonment? If well, again, because of the incomplete record, we don't know what was going on during that period of time. But whatever was going on, he wasn't doing anything helpful, or at least not much during that time. Well, again, we don't know. And there are missing letters that we know actually had to do with the substance of discussions of the case. So we don't know exactly what he was doing. But even if you were to find that this lengthy gap following the 2007 filing of the California Supreme Court petition amounted to some extraordinary circumstance, again, that occurs after the statute of limitations had run long before in February of 2005. I think I view the case differently from the way you're viewing it. And let me get your response to this. I view this as in January of 2005, before the statute had run, the lawyer basically represents to the client, I am about to file your Federal habeas petition. I got it covered. But as the client, I think you're entitled, I would think, to rely on the fact that your lawyer has represented that he is about to file a Federal habeas petition. So therefore, you, in your own mind, would have no reason to worry about the statute of limitations anymore. So sure, years go by, and let's say it turns out that the lawyer lied to you and never filed it. And so five years later, after you think, boy, things have been moving along in federal court, great, I'm about to get relief, the lawyer says, I'm sorry, client, I never did file that, and the statute is blown now. Goodbye. Under your view, the client is totally out of luck because there wasn't a severance of the attorney-client relationship. There wasn't abandonment. The lawyer continued to interact with the client and say, oh, yeah, things are going well. I'm really doing a good job. We're going to get relief. Don't worry. And then when the truth is revealed, it's too late for the client to do anything. There's a big distinction to be made between an attorney who's falsely representing, intentionally so, that he has completed certain tasks when he hasn't. In this case, we have absolutely no finding. The district court did not make a finding that there had been an intentional lie in that January 25th letter. And, in fact, when you look at the letter itself, it appears there's obviously a typo. And the district court found that Weissman may have been confused, and he also may have mischaracterized the form. He may have meant to say, I'm going to be filing shortly in the California Supreme Court, and somehow That's not. I mean, let's just take a look at the language of the letter. That is not what it says. Tell me which page of the ER it's on so I can find it. We're talking about the January 25th letter, right? Yes. Which page of the ER is that on? I thought the language was pretty clear. I have it as the Excerpt of Records 171. Please note, my law clerk has recently finished a draft of a fully exhausted federal writ of habeas corpus. And I'll note that there is no space between federal and writ, and that writ is capitalized, which is inconsistent with federal. The lawyer's not talking about any state court filing. He's talking about, I am going to file the federal writ that you and I have been focused on. That's the whole endgame. Because he was telling the client, don't worry, we've got to go through this rigmarole in state court. But they always just deny stuff. We're really trying to get to federal court. And he's represented to the client. I'm about to protect you by filing this thing within the statute of limitations. And why wouldn't the client be entitled to rely on, yeah, okay, the lawyer did what he said he was going to do? I see my time has expired or is about to expire, but I'd like to respond. Please. First of all, the magistrate judge did not find that this was an intentional misrepresentation and also found that it could have been he didn't intend to write federal. He may have been referring to it may have been intended to write state or maybe he was simply confused entirely. The fully exhausted has no reference to anything other than a federal petition. Would you agree with that? I'm sorry. I didn't catch the first part. The phrase fully exhausted has no relevance to anything other than a federal habeas petition, right? Exactly. Yes. Yes. I mean, whatever the magistrate might have said on this point just strikes me as completely implausible. The reference is clearly to something that's going to be filed in federal court. Well, I'd also like to we don't the magistrate judge did not make such a finding and I'd also like to point out that within two weeks after this particular letter was sent in February 8th of 2005, this is the last letter that was sent by Weissman before the statute of limitations expired. That that letter has not been provided. It was one of the letters that was not provided in the record. But it's important because when you look at subsequent letters that cross reference it, the tone was clearly virtually hopeless. And it was prompted by this Court's decision in Buckley v. Terhune, which significantly limited the availability to introduce new evidence in a federal forum. And so evidently Weissman had sent a letter to Petitioner within just two weeks of this January letter where he explained information about the case. So even if we do find that this was a lie, which we don't have any finding below, but that would have been remedied or negated by the subsequent letter, which we don't have in the record. And you seem to be saying that it needs to be an intentional lie, but I don't know how you can reconcile that with Gibbs, where the lawyer said I don't think there's anything in Gibbs that suggests that when the lawyer said I'll send you the Supreme Court decision when it issues, so you know what's going on in your state post-conviction process, that he was lying. I mean, Gibbs says, look, the lawyer said he'd let you know when your state process was over, and then he didn't. And then you missed your deadline, and that's extraordinary. Where's the intentional misrepresentation there? Well, I think that in Gibbs you could infer it based on the complete failure to do anything more. In this case, though, we have numerous correspondence between Petitioner and Weissman which would tend to negate that he was purposely trying to deceive his client. And in fact, his subsequent letters don't talk about that there is this pending Federal habeas petition. Instead, his letters discuss my next plan is I'm going to file in the California Supreme Court in December of 2005. That was one of his last letters to Petitioner. And then, of course, he mentions that he would ultimately be returning back to Federal Court. The other important thing to keep in mind is that Weissman did inform Petitioner of what was going on. He indicated, when I'm about to file a document, that I'm going to send it to you for your signature. Both the State Court of Appeal petition and the Supreme Court petition had Petitioner's signature on it, and Petitioner was aware of when those denials occurred. If I could also just briefly respond to this Court's comments about diligence. Again, we only get to diligence if we find there was an extraordinary circumstance. And, of course, the extraordinary circumstance has to actually cause the late filing. If this Court were to find that the period between 2011 and 2007 and 2011 constituted some sort of abandonment that would be an extraordinary circumstance, there still needs to be causation to show that that resulted or that prevented a timely filing at some point before the ultimate filing in 2011. As this Court has mentioned, there were gaps significantly by Petitioner where he knew what was going on and what was not going on, and yet didn't take any steps to send more letters to his attorney. The other client in Gibbs, there had been a filing of a complaint with the State Bar. There wasn't any such filing in this case. Kagan. Do we have any case that says he had to file with the State Bar? No. And, in fact, well, in Maples, what the Court says that a client cannot be faulted for failing to act on his own behalf when he lacks reason to believe that his attorneys of record, in fact, are not representing him. And, of course, Gibbs and Busbee have both recognized that there isn't any obligation for the Petitioner to proceed on a dual track. So but once there is cause to be aware that perhaps you've been abandoned, you can't simply do nothing. And that point is well illustrated in Ruddin where the Petitioner had been abandoned by her first attorney for three years, but then when she had a new attorney and that attorney and Ruddin had discovered nothing had been filed, there was still another three-year delay before the petition was finally filed. And as this Court found in Ruddin, the failure to timely file as soon as the extraordinary circumstance was removed or was no longer a preventing, that that precluded an award of equitable tolling. Okay. You've gone well over your time. I apologize. Let's hear from the Petitioner's counsel. Let's put three minutes on the clock, please. Thank you. First, the letter that was sent by Petitioner's counsel in February, in January or February, rather, was a lie. There's no question about it. I submitted a declaration. I got his file. I looked. There was no fully exhausted Federal petition. There couldn't be because he hadn't gone to the State supreme court. But there was nothing in there that purported to be a fully exhausted petition. There's not a draft of a petition. Straight-out lie. Secondly, I think if we could step back a little bit on this, the Petitioner asked for an attorney to represent him. Petitioner is not the smartest fellow in the world. He's in jail. He does very little education. The Court appoints an attorney. Now, my experience is that when a person is represented by an attorney and they attempt to file something, either in this Court or the district court, it gets sent back saying you have an attorney. So why we would think that he has to do anything other than leave it to his attorney defeats the purpose of appointing an attorney. And the attorney lied to him and said, as the Court put, it's covered. Now, I don't think we should sanction that. I don't think we should say that this is acceptable behavior that a person – this is the only case I've ever seen where a Petitioner filed a timely petition and then it gets dismissed and we're arguing about equitable estoppel. He filed his petition timely. I think that's all that – diligence goes to whether or not it was an extraordinary event. Well, he was diligent. He filed it. The Majesty – Can I ask about footnote 18 again now? I'm sorry. Not 8, but 18 in Rudin. Did you have a chance to look at it? I did. You know, the musing by a panel of this Court as to maybe he should have done something doesn't exactly set the law in this area. I don't know what he should have done. He couldn't file his own petition. Maybe he could have complained. Well, he could have fired his counsel, or he could have complained to the State Bar about his counsel. He can't fire his – That's what the Petitioners in other cases did. He can't fire an appointed counsel. He can ask a complaint to the judge, but he can't fire his counsel. He could ask that the counsel be removed. Right. But why should he? Because the counsel is telling him everything's okay. I mean, what we have here is he was tricked into blowing the statute. He, when acting on his own, complied with the statute. The Court appoints the attorney. The other thing is, and I don't know that this is the state of the law, but it seems to me when the Court appoints an attorney for somebody, the Court takes some responsibility for the fact that the attorney is ineffective. We can't just simply appoint an attorney and watch the attorney take away everything that the Petitioner's done for himself and say, no problem, that this is okay. What happened here is disgraceful on every level. We have a Petitioner who wants a day in court. That's all he's asking for. He filed a timely petition. He gets a lawyer appointed. The lawyer dismisses the timely filed petition for no particular reason, no stated reason, and then doesn't do anything for seven years. You know, grossly speaking, that shouldn't happen. What happened wasn't fair. My client got a raw deal, and all we're asking for is to go back to court so he can have his day in court. Well, he filed a timely petition, and his lawyer dismissed the timely filed petition. Okay. Thank you, counsel. We appreciate the arguments from both sides in this case. The case just argued will stand submitted.
judges: Gould, Watford, Friedland